NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT DAVIS and DR. BRUCE BARTON, on behalf of themselves and the Putative Class, <br><br> Plaintiffs, <br><br> v. <br><br> BMW OF NORTH AMERICA, LLC and BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT, <br><br> Defendant. | Civil Action No.: 19-cv-19650 <br><br> OPINION |

**CECCHI, District Judge.**

**I.     INTRODUCTION**

This matter comes before the Court on defendant BMW of North America, LLC's ("Defendant")[1] motion to dismiss (ECF No. 10, "MTD") plaintiffs Robert Davis and Dr. Bruce Barton's ("Plaintiffs") first amended putative class-action complaint (ECF No. 6, "FAC"), pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs opposed Defendant's motion (ECF No. 16, "Opp."), and Defendant replied (ECF No. 17, "Reply"). The Court has considered the submissions made in support of and in opposition to the motion and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, Defendant's motion to dismiss is denied.

---

[1] Bayerische Motoren Werke Aktiengesellschaft ("BMW AG") was named as a defendant in the initial complaint but has since been dismissed from this action without prejudice by way of joint stipulation. ECF No. 44.

## II.     BACKGROUND

### a. Factual Background

Plaintiffs bring the instant putative class action on behalf of purchasers of certain BMW or Mini Cooper vehicles (the "Class Vehicles") that purportedly are susceptible to catching fire as a result of an allegedly defective electric auxiliary coolant pump (the "Fire Defect"). The Fire Defect allegedly causes "engine control unit-driven electric auxiliary water pumps" to overheat in high-temperature environments, which purportedly increases the likelihood of engine fires. FAC ¶ 3. Plaintiffs claim that these fires occur without warning and result in extreme safety risk to the Class Vehicles, their owners, and any surrounding property. *Id.* ¶¶ 1–4. Plaintiffs assert that Defendant knew or should have known about the Fire Defect prior to selling the Class Vehicles, and moreover, that Defendant concealed this risk to Plaintiffs and failed take appropriate remedial action while Plaintiffs owned and operated the Class Vehicles. *Id.* ¶¶ 5, 7–12, 48–50, 63–68. Instead, Plaintiffs aver that Defendant sold and serviced the Class Vehicles without warning to Plaintiffs despite Defendant's "exclusive knowledge" that the vehicles contained the Fire Defect. *Id.* ¶¶ 61, 63. Plaintiffs argue that had they known about the Fire Defect, they would not have purchased or leased the Class Vehicles (or would have paid substantially less for them due to the increased fire risk). *Id.* ¶¶ 8, 12, 22, 62. Accordingly, this action arises out of Defendant's allegedly defective design, manufacture, and warranting of the Class Vehicles, as well as their allegedly misleading promotion of the Class Vehicles' purported safety and dependability. *Id.* ¶ 2.

Plaintiff Barton, a Kentucky resident, allegedly purchased his certified pre-owned 2012 Class Vehicle on August 19, 2017, relying on Defendant's marketing materials touting its high quality and outstanding safety record. *Id.* ¶¶ 20–21. Plaintiff claims that Defendant did not

disclose to Barton that his vehicle contained the Fire Defect prior to purchase. *Id.* ¶ 22. In June 2018, Barton purportedly first learned via notice that his vehicle was subject to recall for a defective electric auxiliary coolant pump. *Id.* ¶ 23. Barton alleges to have contacted his BMW dealer to schedule the mandated repair but asserts that BMW was not able to apply the remedy in either June or August 2018. *Id.* In the meantime, Barton alleges that Defendant recommended to park the Class Vehicles outdoors until the recall remedy had been performed. *Id.* On January 10, 2019, Barton's vehicle allegedly suffered a catastrophic engine fire while parked in his driveway. *Id.* ¶¶ 25, 31. Barton's insurer purportedly declared the vehicle a total loss and determined upon inspection that the damage was allegedly caused by the Fire Defect. *Id.* ¶ 26. Plaintiff Davis, a Georgia resident, purchased his Class Vehicle on August 24, 2015, purportedly relying on Defendant's advertising of its reliability, high quality, and outstanding safety record. *Id.* ¶¶ 32–33. On January 9, 2017, when the vehicle had 92,000 miles, Davis claims to have experienced a loss of power in the vehicle while driving to work. *Id.* ¶ 34. A few hours later, Davis discovered a small fire in the engine compartment of the vehicle. *Id.* Davis's insurance company and Defendant allegedly conducted a joint examination of the vehicle and concluded that an unspecified failure in the electric water pump caused the fire. *Id.* ¶ 35. Davis allegedly continued driving the vehicle and never received a recall notice for his purportedly defective coolant pump. *Id.* ¶¶ 36–37.[2] Plaintiffs aver that Defendant had knowledge of the Fire Defect as early as 2009 yet failed to remedy the defective equipment, necessitating several rounds of recalls for an

---

[2] Defendant allegedly issued warranties to each owner or lessee of the Class Vehicles covering "defects in materials or workmanship" for four years or 50,000 miles. FAC ¶ 69–70. Plaintiffs assert that "[i]n many if not most" instances, the Fire Defect does not manifest until after the expiration of the warranty and Defendant has knowledge of this fact. *Id.* ¶ 73. On this motion to dismiss, the submission of a declaration regarding applicable warranty terms does not alter the Court's determinations on the pleadings. *See* MTD at 26 n. 21; Opp. at 26–27 n. 11.

allegedly similar issue. *Id.* ¶ 65. Moreover, Plaintiffs claim that the recalls did not sufficiently benefit class members because the parts required to remedy the Fire Defect were unavailable at the time of recall, and vehicle owners, including Barton, suffered catastrophic vehicle fires in the interim. *Id.* ¶ 66.

Plaintiffs initiated this action on October 31, 2019 and filed their FAC on November 18, 2019. The FAC primarily asserts that Defendant breached warranties, defrauded consumers by failing to disclose the Fire Defect, and misleading Plaintiffs as to the safety of their Class Vehicles. The FAC alleges: violations of the New Jersey Consumer Fraud Act, N.J.S.A. §56:8-2, *et seq.* ("NJCFA") (Counts 1 and 2); breaches of express warranty (Counts 3, 7); breaches of implied warranty (Counts 4, 8, 11); breach of written warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 ("MMWA") (Count 5); violation of the Kentucky Consumer Protection Act, KRS § 367.110 ("KCPA") (Count 6); violation of the Georgia Uniform Deceptive Trade Practice Act, Ga. Code § 10-1-370 *et seq.* ("GUDTPA") (Count 10); violation of the Georgia Fair Business Practices Act, Ga. Code. § 10-1-390 *et* seq. ("GFBPA") (Count 12); and unjust enrichment (Count 9). FAC ¶¶ 81–187. On January 10, 2020, Defendant filed the instant motion to dismiss Plaintiff's putative class-action first amended complaint pursuant to Rule 12(b)(6). *See* MTD. Plaintiffs filed an opposition on February 10, 2020 (*see* Opp.), to which Defendant replied on February 24, 2020 (*see* Reply). The Court will address each of Defendant's arguments in turn below.

### III. <u>LEGAL STANDARD</u>

**Federal Rule of Civil Procedure 12(b)(6)**

To survive dismissal under Rule 12(b)(6), a complaint must meet the pleading requirements of Rule 8(a)(2) and "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). In

evaluating the sufficiency of a complaint, a court must also draw all reasonable inferences in favor of the non-moving party. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Ultimately, a complaint "that offers 'labels and conclusions' or . . . tenders 'naked assertions' devoid of further factual enhancement," will not withstand dismissal under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678 (citations omitted). Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

### IV. DISCUSSION

#### a) Primary Jurisdiction

Defendants first move to dismiss this action on grounds that this Court should defer to the primary jurisdiction of the National Highway Traffic Safety Administration ("NHTSA"), a government agency with federal authority to investigate and remediate motor-vehicle safety defects. MTD at 6–11. The primary jurisdiction doctrine may apply where a claim is originally cognizable in federal court, but enforcement of the claim requires the resolution of issues within the "special competence of an administrative body." *McQueen v. BMW of N. Am., LLC*, No. 12–6674, 2013 WL 4607353, at *3 (D.N.J. Aug. 29, 2013). The Third Circuit considers four factors in determining whether to refer a case to the primary jurisdiction of an agency: (1) Whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) Whether the question at issue is particularly within the agency's discretion; (3) Whether there exists a substantial danger of inconsistent rulings; and (4) Whether a prior application to the agency has been made. *Id.* at *4 (citation omitted).

5

Applying these factors, the Court finds that the NHTSA does not maintain primary jurisdiction over Plaintiffs' instant pleading. Under the first factor, Plaintiffs' consumer fraud and warranty claims are "squarely within the conventional experience of judges and court systems," and resolving the key issues of these claims does not require the expertise of the NHTSA. *Id.*; *Cohen v. Subaru of Am., Inc.*, No. 12–844, 2022 WL 721307, at *37 (D.N.J. Mar. 10, 2022). Similarly, under the second factor, Plaintiffs' claims are not particularly within the NHTSA's discretion. In fact, "common law and warranty remedies have been explicitly preserved by the authorizing statute, indicating that this case falls squarely outside the domain of the NHTSA." *McQueen*, 2013 WL 4607353, at *4 (citing 49 U.S.C. § 30103(d), (e)). The third factor also disfavors the NHTSA's primary jurisdiction, because Defendant "has not identified any NHTSA rulings that a ruling from this Court might undermine or contradict." *Cohen*, 2022 WL 721307, at *37. While determination of the fourth factor is somewhat less clear given the seemingly ongoing status of the NHTSA's recall process, "the NHTSA does not have a mechanism by which Plaintiff could be awarded damages, which pushes this factor in Plaintiff's favor." *McQueen*, 2013 WL 4607353, at *5. Accordingly, the Court declines to invoke the primary jurisdiction doctrine and will not refer this matter to the NHTSA.

### b) Prudential Mootness

Defendant asserts that this Court should dismiss Davis's claims in light of its purported recall of Davis's Class Vehicle, which Defendant argues provides full relief and renders the claims prudentially moot. Under the prudential mootness doctrine, federal courts may "decline to exercise our discretion to grant declaratory and injunctive relief if the controversy is 'so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant.'" *Sierra Club v. U.S. Army Corps*

*of Engineers*, 277 F. App'x 170, 172 (3d Cir. 2008) (quoting *Chamber of Com. v. U.S. Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980)). However, "the prudential mootness doctrine does not confer discretion on the Court to dismiss legal claims." *Cohen*, 2022 WL 721307, at *36. Courts have routinely declined to apply this doctrine where plaintiffs seek not just equitable relief, but legal relief that exceeds what defendants were offering through a recall. *See, e.g.*, *In re Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *40 (S.D.N.Y. July 15, 2016) ("Because the recalls, even those sufficient to remedy the defects, do not compensate Plaintiffs fully for the damages sought here, the Court declines to exercise its discretion to dismiss the remaining claims as prudentially moot."); *Verde v. Stoneridge, Inc.*, 2015 WL 5915262, at *4–5 (E.D. Tex. Sept. 23, 2015) (declining to apply the prudential mootness doctrine, despite a NHTSA-supervised recall, because plaintiff sought "relief such as the diminished value of the vehicle, incidental damages, and replacement of the entire clutch hydraulic assembly"). Here, Davis asserts various legal claims for damages beyond the injunctive relief provided by a recall. *See generally* FAC. Davis alleges sufficient facts to support his claims for diminution in value (*id.* ¶¶ 11, 36, 110, 131, 151) and reimbursement for out-of-pocket expenses including smoke damage in his garage (*id.* ¶¶ 11, 36, 187). Accordingly, Davis's claims are not prudentially moot.

  c) **Choice of Law**

  The Court need not decide whether New Jersey consumer fraud law applies to Plaintiffs or a proposed nationwide class at the motion to dismiss stage in this litigation. *See* MTD at 18–23. While New Jersey's choice of law principles apply to this matter since federal courts with diversity jurisdiction must apply the choice of law principles of the forum state, *see Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941), the Court need not address the choice of law arguments at this juncture. "Applying the factors necessary to determine choice of law . . . is a very fact-

intensive inquiry." *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 721 (D.N.J. 2011) (citing *Harper v. LG Elecs. USA, Inc.*, 595 F. Supp. 2d 486, 491 (D.N.J. 2009) (postponing choice of law analysis "until the parties present a factual record full enough"). The choice of law analysis, therefore, has "routinely been found to be premature at the motion to dismiss phase of a class action lawsuit." *In re Volkswagen Timing Chain Product Liability Litigation*, No. 16–2765, 2017 WL 1902160, at *10 (D.N.J. May 8, 2017); *see also Prudential Ins. Co. of Am. v. Goldman, Sachs & Co.*, No. 12–6590, 2013 WL 1431680, at *5 (D.N.J. Apr. 9, 2013) (choice of law analysis on motion to dismiss premature); *In re Samsung DLP Television Class Action Litig.*, No. 07–2141, 2009 WL 3584352, at *3 (D.N.J. Oct. 27, 2009) (same). Here, the Court requires a more developed factual record to make a choice of law conclusion, and thus declines to determine whether Plaintiffs or a nationwide class can pursue claims under the NJCFA.

### d) Class Certification

Similarly, Defendant's motion to strike class certification (*see* MTD at 23–24) is premature. Courts throughout the Third Circuit have routinely declined to hear premature arguments regarding class certification in similar circumstances. *See Sisolak v. Ford Motor Co.*, No. 18–1182, 2019 WL 3503057, at *5 (D.N.J. July 31, 2019) ("The Court denies Defendant's Motion to Strike. . . as premature and finds the class certification analysis more appropriate for a later stage of the litigation."); *see also Neuss v. Rubi Rose, LLC*, No. 16-2339, 2017 WL 2367056, at *10 (D.N.J. May 31, 2017) (quoting *Landsman & Funk PC v. Skinder–Strauss Assoc.*, 640 F.3d 72, 93 n.30 (3d Cir. 2011) ("Motions to strike, however, are generally disfavored in this circuit at the motion to dismiss stage, and the Third Circuit has acknowledged that there are 'rare few cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met.'"); *see also Weske v. Samsung Elecs., Am., Inc.*, 934 F. Supp. 2d 698, 707 (D.N.J. 2013)

("[N]umerous cases in this District have emphatically denied requests to strike class allegations at the motion to dismiss stage as procedurally premature."). Accordingly, because the issue of whether Plaintiffs can satisfy the class certification requirements is a fact-intensive question, the Court declines to strike Plaintiffs' allegations at this stage.

### e) Breach of Express Warranty

Defendant argues that Plaintiffs' breach of express warranty claims must fail because the warranties at issue do not extend to the type of design defect alleged in Plaintiffs' FAC. MTD at 25–26. In opposition, Plaintiffs contend that they have sufficiently alleged potential manufacturing defects covered by the applicable warranties. FAC ¶ 4 ("This Fire Defect is inherent in the design *and/or manufacture* of the Class Vehicles.") (emphasis added); Opp. at 25–26. Regardless, it is "premature at this stage to dismiss Plaintiffs' express warranty claim on the grounds that it is based on defective design as opposed to defects in material or workmanship." *In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*, No. 14–3722, 2015 WL 4591236, at *19 (D.N.J. July 29, 2015); *see also Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856, 883 (D.N.J. 2020) ("Courts in this district have previously refused to apply a distinction between a defect in design and a defect in materials or workmanship at the pleadings stage of litigation.") (internal quotation omitted); *Alin v. Am. Honda Motor Co., Inc.*, No. 08–4825, 2010 WL 1372308, at *6 (D.N.J. Mar. 31, 2010) ("At the pleading stage, where the distinction between defect in design and defect in materials or workmanship is a matter of semantics, and sufficient facts are alleged to assert both, the defendant's characterization of the nature of the claim pre-discovery should not control whether the complaint survives.").[3] Accordingly, at present, construing these claims in the

---

[3] Defendant's contrary authority is distinguishable or inapplicable. For example, the Third Circuit in *Coba v. Ford Motor Co.* affirmed a finding of a design defect *at the summary judgment stage*, not on a motion to dismiss. 932 F.3d 114, 123 (3d Cir. 2019). In fact, earlier in the *Coba* litigation,

light most favorable to Plaintiffs, the Court will not dismiss Plaintiffs' claims for breach of express warranty for failure to plead a valid manufacturing defect.

Defendant also moves to dismiss the express warranty claims on grounds that Plaintiffs' vehicles suffered damage outside of the agreed upon warranty period. MTD at 26–30. Nevertheless, Plaintiffs argue that the claims survive due to the alleged unconscionability of the express warranties. *See Henderson v. Volvo Cars of N. Am., LLC*, No. 09–4146, 2010 WL 2925913, at *9 (D.N.J. July 21, 2010) (finding that an action brought outside the express warranty period could survive a motion to dismiss where plaintiff sufficiently claimed unconscionability). Plaintiffs assert unconscionability based on Defendant's exclusive knowledge and concealment of the defect, unequal bargaining power between the purchaser and the retailer/manufacturer, and lack of meaningful choice in setting the terms of the warranty. FAC ¶¶ 108–13. Courts have found that plaintiffs may establish unconscionability at the pleading stage based upon these allegations. *See Henderson*, 2010 WL 2925913, at *9 (concluding that plaintiffs sufficiently pleaded unconscionability at the motion to dismiss stage by alleging lack of "meaningful choice" in setting the warranty, a "gross disparity in bargaining power" between defendants and the class members, and that defendants had knowledge that the part would fail when sold); *In re Volkswagen Timing Chain Prod. Liab. Litig.,* 2017 WL 1902160 (same)*; In re Samsung DLP Television Class Action Litig.*, 2009 WL 3584352, at *5 (D.N.J. Oct. 27, 2009) (same); *Payne v. Fujifilm U.S.A., Inc.*, No. 07–385, 2007 WL 4591281, at *5 (D.N.J. Dec. 28, 2007) (noting that plaintiff adequately pleaded unconscionability by specifically alleging that defendant knew, or should have known, of

---

Judge Debevoise denied a motion to dismiss, reasoning that "it is unclear whether the Fuel Tank Defect is a design defect or a defect in materials or workmanship, and the Court need not resolve the issue at the pleading stage." *Coba v. Ford Motor Co.*, No. 12–1622, 2013 WL 244687, at *6 (D.N.J. Jan. 22, 2013).

10

the alleged defect in the product and that defendant failed to disclose same to members of the class).

Here, Plaintiffs have adequately pleaded that Defendant knew about the Fire Defect as early as 2009 and misleadingly concealed the defect from Plaintiffs. FAC ¶¶ 63–67. Further, Plaintiffs have sufficiently alleged "a gross disparity in bargaining power" and "no meaningful choice" in the warranty negotiation. *Id*. ¶ 112; *see Skeen v. BMW of N. Am., LLC*, No. 13–1531, 2014 WL 283628, at *14 ("It is not conclusory to state that a consumer purchasing a car has less bargaining power than the manufacturer and that he had no meaningful choice in setting the terms of the warranty."). Accordingly, the Court will not dismiss Plaintiffs' claims for breach of express warranty.[4]

### f) Breach of Implied Warranty

Plaintiffs claim that Defendant breached its implied warranties by concealing knowledge of the Fire Defect and continuing to sell and service the Class Vehicles to consumers in an allegedly unmerchantable condition. FAC ¶¶ 114–20; 169–74. "Under an implied warranty of merchantability, a manufacture[r] warrants to deliver a product that is reasonably suitable for the ordinary uses it was manufactured to meet." *Greene v. BMW of N. Am.*, No. 11–04220, 2013 WL

---

[4] The Court is not declaring the warranties unconscionable at this juncture; but rather is finding that Plaintiffs have met their burden on pleading. "[U]nconscionability is highly fact dependent and so is not appropriate for determination on a motion to dismiss." *Skeen*, 2014 WL 283628, at *15. *See also Gelis v. Bayerische Motoren Werke Aktiengesellschaft,* No. 17-cv-07386, 2018 WL 6804506, at *6 (D.N.J. Oct. 30, 2018) ("But if a court thinks a contractual clause may be unconscionable, the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect.") (internal quotation omitted); *Cooper v. Samsung Electronics America, Inc.*, 2008 WL 4513924, at *3 (D.N.J. Sept. 30, 2008) ("[M]uch of the information required to decide the issue of unconscionability is either not properly before the court . . . or not sufficiently developed by discovery" and is an issue "more suitable for decision at summary judgment").

5287314, at *2 (D.N.J. Sept. 17, 2013) (citing *Green v. G.M.C.*, 2003 WL 21730592, at *6 (N.J. Super. Ct. App. Div. July 10, 2003)). "In the context of a car, this warranty is satisfied when the vehicle provides safe and reliable transportation." *Green*, 2003 WL 21730592, at *6. According to the pleading, the Fire Defect allegedly caused the Class Vehicles to suddenly stop running or catch fire without warning, resulting in an extreme safety risk. FAC ¶¶ 1–4, 150. Barton's vehicle suffered a catastrophic fire while parked in his driveway, resulting in the total loss of his vehicle. *Id.* ¶¶ 25–31. Davis's vehicle experienced a loss in power while driving, and later suffered an engine fire in his garage. *Id.* ¶ 34. Thus, Plaintiffs' allegations effectively give rise to a plausible inference that the Fire Defect poses a safety risk sufficient to violate an implied warranty. *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *15 (finding plaintiff sufficiently pleaded an implied warranty claim where he alleged that his vehicle's defect "led to failure of the vehicle in general"); *Greene*, 2013 WL 5287314, at *3 (finding plaintiff sufficiently pleaded an implied warranty claim where he alleged his vehicle's tires were prone to "catastrophic failure."). Moreover, "while the safety risk alleged here may be of a different nature than the risks alleged in other vehicle-defect cases from this District," whether the Fire Defect "posed enough of a safety risk to actually hamper the Class Vehicles' ability to provide safe, reliable transportation is ultimately a question of fact to be resolved at summary judgment or by a jury."[5] *George v. Jaguar Land Rover N. Am. LLC*, No. 20–17561, 2021 WL 5195788, at *8 (D.N.J. Nov. 8, 2021).

---

[5] The Court need not conduct a choice of law analysis to determine, as Defendant argues, whether Plaintiffs must allege privity between the Plaintiffs and the Defendant as manufacturer of the Class Vehicles to sustain a breach of implied warranty claim. *See, e.g.*, *Opheim v. Aktiengesellschaft*, No. 20–02483, 2021 WL 2621689, at *9 (D.N.J. June 25, 2021) (finding that a determination on privity in a breach of implied warranty claim is "unsuitable for adjudication on a Rule 12(b)(6) motion.").

Accordingly, the Court denies Defendant's motion to dismiss the breach of implied warranty claims.

### g) Breach of Warranty under the Magnuson-Moss Warranty Act

Plaintiffs assert that Defendant breached express warranties in violation of the MMWA, 15 U.S.C. § 2301 *et seq*. FAC ¶¶ 121–31. Under the MMWA, "a consumer who is damaged by the failure of a supplier ... to comply with any obligation ... under a written warranty [or] implied warranty ... may bring suit for damages and other legal and equitable relief ... (B) in an appropriate district court of the United States" subject to exceptions not raised here. 15 U.S.C. § 2310(d). Thus, the MMWA creates a federal cause of action for state law express and implied warranty claims. Here, Plaintiffs base their MMWA claims on the underlying state law claims for breach of express warranty. FAC ¶¶ 126–31. As this Court has determined the sufficiency of Plaintiffs' express warranty claims at the pleading stage, dismissal of this MMWA claim is not warranted.

### h) Barton's KCPA Claim

Defendant argues Barton's KCPA claim is time-barred under the KCPA's two-year statute of limitations period, which it asserts began running when Plaintiff allegedly purchased the vehicle on August 19, 2017. MTD at 33–34. In opposition, Plaintiffs contend that the statute of limitations did not accrue until June 2018 when Defendant allegedly made false promises about the recall notice and availability of requisite repairs. FAC ¶ 23; Opp. at 31–32. Whether Barton's cause of action accrued when he purchased his vehicle in 2017 or when he was denied his repairs in 2018 is an issue of fact inappropriate for disposition on a motion to dismiss. *Elam v. Menzies*, 594 F.3d 463 (6th Cir. 2010) ("In Kentucky, when there is a disputed issue of fact as to when a plaintiff 'discovered or should have discovered' his cause of action, that factual issue should be resolved by the jury in cases in which the plaintiff has asked for a jury. Although the validity of

the defense of statute of limitations is determined by the court as a matter of law, where 'there is a factual issue upon which the application of the statute depends, it is proper to submit the question to the jury.'") (quoting *Lynn Mining Co. v. Kelly*, 394 S.W.2d 755, 759 (Ky. 1965). Accordingly, construing the factual allegations in the light most favorable to Plaintiffs, the Court will not dismiss Barton's complaint as time-barred.[6]

### i) Davis's GUDTPA Claim

Defendant moves to dismiss Davis's GUDTPA claim on grounds that Plaintiffs are limited to injunctive relief under the GUDTPA, and Davis is barred from that injunctive relief for failure to allege a "future" harm as required by statute. MTD at 34–36; O.C.G.A. § 10-1-373(a) ("A person *likely to be damaged* by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable."). The Court, however, agrees with Plaintiffs in finding that the FAC plausibly alleges that Defendant's refusal to acknowledge or remedy the Fire Defect in Davis's vehicle may represent a deceptive trade practice under the GUDTPA. *See* O.C.G.A. § 10-1-372(a) ("A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he: ... (5) Represents that goods or services have ... characteristics ... that they do not have ...; [or] (7) Represents that goods or services are of a particular standard, quality, or grade ... if they are of another[.]"). *Amin v. Mercedes-Benz USA, LLC* is instructive here. 301 F. Supp. 3d 1277, 1295 (N.D. Ga. 2018). There, plaintiffs plausibly alleged a deceptive trade practice by contending that upon seeking

---

[6] The Court similarly defers judgment as to whether Plaintiffs may assert equitable tolling under Kentucky law. FAC ¶¶ 47–50. *See, e.g.*, *Nicely v. Pliva, Inc.*, 181 F. Supp. 3d 451, 456 (E.D. Ky. 2016) ("The Court may, in its discretion, allow equitable tolling of a statute of limitations in order to prevent unjust results," particularly in situations beyond the plaintiff's control, such as "where the complainant had been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.").

14

service for a vehicle defect, defendant falsely represented that plaintiff's class vehicle was free from the purported defect. *Id.* The court held that these allegations in particular "concern both ongoing and future harm of the type contemplated by O.C.G.A. § 10-1-373." *Id.*

Similarly, here, Davis alleges that he experienced a fire in his Class Vehicle, that Defendant participated in the examination of the vehicle, and that Defendant purportedly concluded that the cause of the fire was an "*unspecified failure*" in the electric water pump. FAC ¶¶ 34–35 (emphasis added). Plaintiffs assert that Defendant did not inform Davis that his vehicle suffered from the Fire Defect subsequent to this inspection. *Id.* After the incident, Davis claims to have learned that other model vehicles had been recalled for a virtually identical defect, but his had not. *Id.* ¶ 37. Accordingly, like in *Amin*, because Davis purports to have suffered from Defendant's deceptive trade practices, his allegations support a future harm and a viable basis for injunctive relief.

### j) Davis's GFBPA Claim

Defendant asserts that Davis's GFBPA claim must be dismissed because the GFBPA expressly precludes class-action claims and, alternatively, because Davis does not adequately plead reliance. The Court denies Defendant's motion to dismiss Davis's GFBPA claim. First, federal courts have permitted class actions to proceed under the GFBPA when they are pursued under Rule 23, as is the situation here. *Amin*, 301 F. Supp. 3d at 1292 (Holding that the GFBPA's supposed bar on class actions "conflict[s] with Rule 23" and thus cannot bar class-action claims). *See also Ace Tree Surgery, Inc. v. Terex Corp.*, No. 16–0775, 2018 WL 11350262, at *16 (N.D. Ga. Dec. 10, 2018) ("[T]his Court concludes that Rule 23 supersedes the class-action provision in the GFBPA and allows Plaintiffs to maintain their claims as a class-action."); *Andren v. Alere, Inc.*, 2017 WL 6509550, at *22 (S.D. Cal. Dec. 20, 2017) ("[A] representative action for monetary relief is not barred under Georgia ... law."). Next, the Court concludes that Davis adequately pleads

15

reliance under the GFBPA. Georgia courts consider "justifiable reliance" as an "essential element" to a GFBPA claim. *Amin*, 301 F. Supp. 3d at 1289–90. Here, Plaintiffs' FAC specifically alleges that Davis relied upon advertisements and other marketing materials touting Defendant's high quality and outstanding safety record, and that if not for Defendant's concealment, he would not have purchased the vehicle or would have paid significantly less. FAC ¶¶ 2, 18, 21, 33, 58, 74, 83–84, 94, 97, 143, 177–85. Such is sufficient at this stage to adequately plead reliance.

 **k) Unjust Enrichment**

Lastly, Defendant argues that Plaintiffs' unjust enrichment claims should be dismissed for lack of privity under New Jersey law, and for inability to plead unjust enrichment when a valid contract exists under Georgia and Kentucky laws. MTD at 38–39. Defendant's arguments are without merit. Courts in this District have held that a manufacturer that advertises its products directly to consumers, as alleged here (FAC ¶¶ 2, 18, 21, 24, 33, 83–84, 94, 97, 143), may be liable for unjust enrichment even if the consumer purchases the product from an intermediate retailer. *See, e.g.*, *Gelis*, 2018 WL 6804506, at *10. *See also DeFrank v. Samsung Elecs. Am. Inc.*, 19–21410, 2020 WL 6269277, at *24 (D.N.J. Oct. 26, 2020) ("[I]t is clearly not the case that New Jersey law prohibits unjust enrichment simply because the parties are not in privity"); *Stewart v. Beam Glob. Spirits & Wine, Inc.*, 877 F. Supp. 2d 192, 199 (D.N.J. 2012). Furthermore, courts in Georgia and Kentucky have recognized that at the motion to dismiss stage, unjust enrichment may be pleaded in the alternative, as it is here, even where an allegedly valid contract exists. *Amin*, 301 F. Supp. 3d 1277, 1296–97 ("While a party, indeed, cannot recover under both a breach of contract and unjust enrichment theory, a plaintiff may plead these claims in the alternative.") (citation omitted); *Naiser v. Unilever U.S., Inc.*, 975 F. Supp. 2d 727, 2013 WL 5460870 (W.D. Ky. Sept. 30, 2013) ("Case law suggests that Plaintiffs may allege both a breach of warranty claim and an

16

unjust enrichment claim in their complaint.") (citation omitted).  Here, Plaintiffs sufficiently allege in the alternative that Defendant benefited financially from its alleged breach of warranty, misrepresentations, and fraud.  FAC ¶¶ 153–60.  Thus, Plaintiffs have adequately pleaded an unjust enrichment claim.

## V.     CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss (ECF No. 10) is denied.  An appropriate Order accompanies this Opinion.

**DATED**:  August 23, 2022

                                                                     s/ Claire C. Cecchi
                                                          **CLAIRE C. CECCHI, U.S.D.J.**